# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| JOANNE F., | ) | |
| | ) | |
|       Plaintiff, | ) | No. 17 C 6948 |
| | ) | |
| v. | ) | Magistrate Judge Jeffrey Cole |
| | ) | |
| NANCY A. BERRYHILL, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|       Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Joanne F.,[1] applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§416(i), 423, over three years ago. (Administrative Record (R.) 207-15). She claimed that she became disabled as of December 22, 2010 (R. 201), due to post traumatic stress disorder, depression, suicidal tendencies, diabetes, hypertension, and a stroke. (R. 266). Over the ensuing three years, plaintiff's application was denied at every level of administrative review: initial, reconsideration, administrative law judge (ALJ), and appeals council. It is the ALJ's decision that is before the court for review. See 20 C.F.R. §§404.955; 404.981. Plaintiff filed suit under 42 U.S.C. § 405(g), and the parties have consented to the jurisdiction of a Magistrate Judge pursuant to 28 U.S.C. § 636(c) on November 22, 2017. [Dkt. # 5]. The case was recently reassigned to me on January 10, 2019. [Dkt. #27]. Plaintiff asks the court to reverse and remand the Commissioner's decision, while the Commissioner seeks an order affirming the decision.

---

[1] Northern District of Illinois Internal Operating Procedure 22 prohibits listing the full name of the Social Security applicant in an Opinion. Therefore, the plaintiff shall be listed using only their first name and the first initial of their last name.

**I.**

Plaintiff was 59 years old at the time of the ALJ's decision. (R. 33, 207). She has an excellent work history, working steadily from 1982 through 2011 (R. 231), most recently in custodial services with the Chicago public schools, but prior to that, for nearly 25 years as a fleet service clerk for American Airlines. (R. 254). The fleet service work was heavy work, and involved loading and unloading planes, cleaning cabins, de-icing, and driving trucks to transport cargo. (R. 51, 256). Plaintiff left that job following a sexual assault; she started forgetting what she was supposed to do and could no longer keep up with the pace of the job. 9R. 47).

Plaintiff has accumulated over 600 pages of medical evidence (R. 332-942) – covering treatment for a number of issues. As is generally the case, however, the parties indicate that only a small percentage of it is pertinent. Plaintiff cites to about three dozen pages of treatment records to support her argument for overturning the ALJ's decision. (Dkt. #11, at 2-4, 8). The Commissioner cites to about twenty pages. (Dkt. #21, at 5, 12-15). Accordingly, we will dispense with a tedious summary and discuss only those doctor visits and medical findings that the parties tell us matter.

After an administrative hearing – at which plaintiff, represented by counsel, and a vocational expert testified – the ALJ determined she was not disabled. The ALJ found that plaintiff had several severe impairments: "hypertension; diabetes mellitus; obesity; arthritis of the right knee; history of transient ischemia attack; posttraumatic stress disorder; and depression." (R. 21). Plaintiff's psychological impairments caused mild limitations in the areas of understanding, remembering, and applying information; interacting with others; and adapting or managing oneself. (R. 22). She had a moderate limitation in concentrating, persisting and maintaining pace. (R. 22). None of plaintiff's impairments, singly or in combination, amounted to a condition that met or equaled an impairment

assumed to be disabling in the Commissioner's listings. (R. 21-22).

The ALJ then determined that plaintiff could perform "medium work . . . except the claimant is able to lift, carry, push and pull 25 pounds frequently and 50 pounds occasionally; she is able to stand and walk for six hours and sit for six hours out of an eight hour day; she is able to frequently climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she is able to occasionally climb ladders, ropes, or scaffolds; she is limited to no work around unprotected heights, open flames or dangerous and or moving machinery; and she is limited to work involving simple routine instructions and tasks." (R. 23). The ALJ summarized the medical evidence and found plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for reasons explained in this decision." (R. 24). The ALJ said the medical evidence did not support her allegations, she was non-compliant with treatment, and uncooperative with the state agency in regard to completing daily activity forms. (R. 28).

The ALJ gave some weight to the opinions from the state agency medical consultants that reviewed the medical record, finding they were supported by the medical evidence. (R. 30). She parted company with those reviewing doctors in regard to plaintiff's obesity which she accommodated with further postural limitations. (R. 31). The ALJ gave no weight to a statement from a doctor who examined plaintiff on one occasion and found she was temporarily disabled. The doctor was not a treating source, the statement failed to indicate any specific limitations, and was on a topic reserved for the Commissioner. (R. 30).

3

Next, the ALJ found that plaintiff unable to perform her past relevant work as a fleet service clerk, because of environmental restriction against working around moving machinery. (R. 31). The work also involved more than simple routine instructions and tasks. (R. 31). Additionally, the ALJ found that plaintiff was 53 years old when she claimed she became disabled, and that made her an individual "closely approaching advanced age" at that time under the Commissioner's regulations. (R. 31)). She had since moved into the category of "advanced age." (R. 31). Given a full capacity to perform medium work, transferability of job skills was not an issue, plaintiff would be found "not disabled" under the Medical Vocational Guidelines. (R. 31). As she did not, the ALJ relied on the testimony of the vocational expert who said that an individual with plaintiff's restrictions could perform work as a hand packager, cleaner, or laundry worker. (R. 31). As these jobs exist in significant numbers in the national economy, the ALJ found that plaintiff was not disabled and was not entitled to benefits under the Act. (R. 32-33).

## II.

If the ALJ's decision is supported by substantial evidence, the court on judicial review must uphold that decision even if the court might have decided the case differently in the first instance. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). To determine whether substantial evidence exists, the court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley*, 758 F.3d at 837. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is entitled to benefits," the court must defer to the

Commissioner's resolution of that conflict. *Schloesser v. Berryhill*, 870 F.3d 712, 717 (7th Cir. 2017); *Binion v. Chater,* 108 F.3d 780, 782 (7th Cir.1997).

But, in the Seventh Circuit, the ALJ also has an obligation to build an accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *O'Connor–Spinner v. Astrue,* 627 F.3d 614, 618 (7th Cir.2010). The court has to be able to trace the path of the ALJ's reasoning from evidence to conclusion. *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); *Jelinek v. Astrue*, 662 F.3d 805, 812 (7th Cir. 2011). Even if the court agrees with the ultimate result, the case must be remanded if the ALJ fails in his or her obligation to build that logical bridge. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)(". . . we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *see also Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010)("The government seems to think that if it can find enough evidence in the record to establish that the administrative law judge might have reached the same result had she considered all the evidence and evaluated it as the government's brief does, it is a case of harmless error. But the fact that the administrative law judge, had she considered the entire record, might have reached the same result does not prove that her failure to consider the evidence was harmless. Had she considered it carefully, she might well have reached a different conclusion."). For a discussion of the logical bridge *see King v. Berryhill*, 2018 WL 6179092 (N.D.Ill. 2018).

## III.

### A.

The ALJ's decision in this case includes a few troubling aspects, some of which require remand on their own, others are simply head-shakers. In any event, though, a remand is required. As such, we won't go through the entire opinion or the entire, massive medical record, or address all of plaintiff's arguments.

We begin with the ALJ's RFC finding. Plaintiff, the ALJ found, has severe arthritis in her right knee and severe obesity. (R. 21). Her BMI has ranged from 37.4 to 44.6; she is either morbidly obese or nearly so, based on readings the ALJ cited from the record. (R. 21); *see Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014). She was 59 when the ALJ denied her claim. Yet, despite the combination of morbid obesity and severe arthritis of the knee, the ALJ found that plaintiff could climb ramps and stairs and kneel and crawl between one-third and two-thirds of every day. *See* SSR 83-10, 1983 WL 31251, at *6 (1983). She could, the ALJ found, also climb ropes and scaffolds up to one-third of every day. The ALJ's finding brings to mind the Seventh Circuit's commentary in *Goins v. Colvin*, 764 F.3d 677, 682 (7th Cir. 2014):

> If we thought the Social Security Administration and its lawyers had a sense of humor, we would think it a joke for its lawyer to have said in its brief that the administrative law judge "accommodated [the plaintiff's] obesity by providing that she could never [be required as part of her work duties to] climb ladders, ropes, or scaffolds, and could only occasionally climb ramps or stairs, balance, kneel, crawl, stoop, and/or crouch." . . . Does the SSA think that if only the plaintiff were thin, she could climb ropes? And that at her present weight and with her present symptoms she can, even occasionally, crawl, stoop, and crouch?

764 F.3d at 682. *See also Spicher v. Berryhill*, 898 F.3d 754, 758-59 (7th Cir. 2018)(questioning how obese plaintiff with other non-severe impairments could balance, stoop, kneel, crouch, and

6

crawl). Here, the ALJ said, with apparent seriousness, that she accommodated plaintiff's obesity and other impairments not by eliminating activities like climbing stairs or ropes or scaffolds, *but* merely by reducing them to perhaps a few hours a day or, in the case of rope-climbing, no more than about two hours a day. It is unfortunate but obvious that the ALJ failed to consider all of plaintiff's impairments in combination, as she was required to do. *See Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014)(". . . pain . . . in legs . . . bound to be aggravated by obesity."); *Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014); *Spicher*, 898 F.3d at 759 (remand where ALJ failed to consider combined effects of obesity and mild effects of old humerus fracture).

That's a logical bridge problem, but let's set it aside for the moment. Along the way to arriving at her RFC finding, the ALJ determined that plaintiff had moderate limitations on her ability to concentrate, persist, or maintain pace. (R. 22). The ALJ attempted to account for this by limiting plaintiff to "work involving simple, routine instructions and tasks." (R. 23, 31). The Commissioner thinks that did the trick, arguing that case law is such that a limitations to simple, routine work "may adequately accommodate a moderate limitation in the areas of concentration, persistence, and pace where the medical evidence does not support a finding of 'significant problems' in that functional area." [Dkt. #21, at 10].

We disagree with the Commissioner and follow the Seventh Circuit's thinking on this issue, recently voiced in *Moreno v. Berryhill*, 882 F.3d 722 (7th Cir. 2018), where the court rejected the notion that a restriction to "simple work instructions and to routine, low-stress work 'reasonably accommodated [plaintiff]'s moderate difficulties in concentration, persistence or pace.'" The court was clear:

7

We cannot accept this argument. "[W]e have repeatedly rejected the notion that a hypothetical like the one here confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace."

882 F.3d at 730. *See also Lanigan v. Berryhill*, 865 F.3d 558, 565–66 (7th Cir. 2017)("We have explained that the speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work.").[2] We cannot accept the Commissioner's argument either, of course.

When an individual has a restriction on their ability to maintain concentration, persistence and pace, it's not a question of how simple the work is. A simple job or an unskilled job may easily exceed the limits of someone who has a moderate restriction on their ability to maintain concentration, persistence, and pace. *See Kasarsky v. Barnhart*, 335 F.3d 539, 544 (7th Cir. 2003)("... the length of time it takes someone with borderline intelligence to learn a job is not the same as the ability of that person to perform consistently once trained."); SSR 85–15, 1985 WL 56857 (1985) ("Because response to the demands of work is highly individualized, the skill level of a position is not necessarily related to the difficulty an individual will have in meeting the demands of the job. A claimant's [mental] condition may make performance of an unskilled job as difficult as an objectively more demanding job.").

For example, imagine an unskilled job that involves a conveyor delivering a product to a worker who must then place it in a receptacle—product after product, receptacle after receptacle, over and over, all day long. Many unskilled, simple jobs are made up of precisely this type of tedium.

---

[2] The Commissioner also argues that there is no evidence in the record that "plaintiff had any specific functional restrictions relating to problems maintaining concentration, persistence or pace." [Dkt. # 21, at 9]. But it was the ALJ, herself, that so found. (R. 22).

Those of a certain age might recall the classic Lucille Ball–Vivian Vance sketch where the two were tasked with wrapping candies coming down a conveyor at a candy factory. See http://www.youtube.com/watch?v=8NPzLBSBzPI. The job is exceedingly simple. It is repetitive, routine, and unskilled. But for one whose concentration waxes and wanes, or cannot persist or maintain a pace throughout the day, it is a daunting if not impossible occupation. This is why a limitation to unskilled, simple work does not necessarily account for a limitation in concentration. It's also why this case has to be remanded to the Commissioner for further proceedings.

At the hearing, the ALJ didn't include any restriction stemming from a moderate limitation in concentration, persistence, or maintaining pace in her hypothetical to the vocational expert, not even a faulty restriction to simple, routine work. (R. 74-75). That was a mistake: an ALJ's hypothetical to a vocational expert must include all the limitations supported by the medical record. *Moreno*, 882 F.3d at 730; *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The ALJ sought to correct this error a month after the hearing by sending written interrogatories to the vocational expert that included the ALJ's limitation to "work involving simple, routine instructions and tasks." (R. 32, 315).

That's probably alright, but it's not ideal: it's out of earshot of the plaintiff's attorney at the hearing and buried in a 942-page record. It also can operate to subtly convey a message to the witness. Rules regarding expert testimony that apply elsewhere don't apply in Social Security disability cases. *Chavez v. Berryhill*, 895 F.3d 962, 968 (7th Cir. 2018). But, still, foreclosing plaintiff's counsel's only opportunity to cross examine the vocational expert on this point was less than ideal. *Cf. Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004)(faulting counsel for failing to cross examine vocational expert). Indeed, based on the briefs filed here, it's not clear either side

ever picked up on what the ALJ did. [Dkt. # 21, at 10-11 (referring to the ALJ's hypothetical but neither quoting it nor citing to the record); #22, at 5 (arguing "that the ALJ did not include any mental restrictions in the hypothetical to the VE" and citing hearing record)].

As it stands, the vocational expert's opinion that plaintiff could be a hand packager, a cleaner, or a laundry worker wasn't swayed by the addition of a restriction to work involving "simple, routine instructions and tasks." (R. 74-74, 315). But, can she do that work? Let's look at hand packager. According to the Dictionary of Occupational Titles, which the vocational expert and ALJ relied upon, hand packager involves working with a conveyor. https://occupationalinfo.org/92/920587018.html. It involves loading materials into "processing machines" and "tending packing machines and equipment." The most important ability in the job is the ability to "quickly make coordinated movements of" the hand and arm. https://occupationalinfo.org/onet/98902a.html. As described in the DOT, this type of work is problematic for someone who has trouble maintaining concentration persistence and pace, as was pointed out earlier. *Cf. Browning v. Colvin*, 766 F.3d 702, 709 (7th Cir. 2014)("It is apparent from the description that many of the jobs are beyond the plaintiff's capacity to do."). Moreover, the ALJ found – and told the vocational expert – that plaintiff could not work around moving machinery. Hand packager clearly involves working with moving machinery.

As is often the case, the descriptions and boxcar numbers for the jobs the vocational expert and the ALJ cited are suspect. *See, e.g., Chavez*, 895 F.3d at 963; *Allensworth v. Colvin*, 814 F.3d 831, 836 (7th Cir. 2016); *Alaura v. Colvin*, 797 F.3d 503, 507–08 (7th Cir. 2015); *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014). The hand packager and laundry worker entries were last updated in 1977, over 40 years ago. https://occupationalinfo.org/36/361685018.html As the

10

Seventh Circuit said in another "hand packager case," "[i]f these job titles sound obscure, that is a fair reaction, as they come from 1977." *Chavez*, 895 F.3d at 965. The entry for cleaner is better; it's "only" 30 years old. https://occupationalinfo.org/38/381687018.html.

The vocational expert said that, nationally, there were 45,000 hand packager jobs; 95,000 cleaner jobs; and 35,000 laundry worker jobs. (R. 32, 74). We don't know where the vocational expert's numbers came from; we only know they didn't come from the DOT, *Chavez*, 895 F.3d at 965; *Herrmann v. Colvin*, 772 F.3d 1110, 1113 (7th Cir. 2014), which was the only source cited in her testimony and in the ALJ's opinion. (R. 32). Confidence in a vocational expert's estimates of job numbers in the national economy is not bolstered by the fact that, even allowing for changes in market conditions over time, and for the fact that a precise count is neither required nor expected, *Chavez*, 895 F.3d at 968, the numbers cited for the same positions vary significantly from case to case. *See, e.g., Brynelson v. Berryhill*, 329 F. Supp. 3d 629, 640 (N.D. Ill. 2018)(800,000 cleaner jobs); *Jontell Riddle Banks v. Comm'r of Soc. §. Admin.*, 2017 WL 4334114, at *5 (N.D. Ohio Sept. 5, 2017)(1.3 million cleaner jobs); *Rodriguez v. Comm'r of Soc. Sec.*, 2017 WL 1362701, at *2 (E.D. Mich. Feb. 21, 2017)( (12,000 cleaner jobs); *Sheriff v. Colvin*, 2017 WL 549628, at *2 (D. Colo. Feb. 10, 2017)(2,068,460 cleaner jobs); *Alaura v. Colvin*, 797 F.3d 503, 507 (7th Cir. 2015)(80,000 hand packager jobs); *Wartak v. Berryhill*, 2018 WL 4561339, at *3 (N.D. Ind. Sept. 24, 2018)(135,000 hand packager jobs); *John S. v. Comm'r of Soc. Sec. Adminstration*, 2018 WL 7049384, at *2 (D. Ore. Oct. 23, 2018)(42,000 hand packager jobs); *Criss v. Comm'r of Soc. Sec. Admin.*, 2018 WL 3368874, at *7 (N.D. Ohio July 10, 2018)((200,000 hand packager jobs); *Lyde v. Berryhill*, 2018 WL 4678574, at *2 (D. Conn. Sept. 29, 2018)(231,000 laundry worker jobs); *Mullins v. Berryhill*, 2018 WL 5649926, at *7 (M.D. Pa. Sept. 14, 2018)(38,500 laundry worker jobs); *Rogers v. Berryhill*,

2018 WL 4340186, at *3 (N.D. Ind. Sept. 11, 2018)(395,000 laundry worker jobs).

On the positive side, the VE in this case seemed to be on the conservative side of these wildly disparate numbers. But, still, there is nothing to prove that her estimates were not "conjured out of whole cloth," *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002), or that they could be relied on.

## CONCLUSION

For the foregoing reasons, this case is remanded to the Commissioner for further proceedings.[3]

ENTERED: _____
UNITED STATES MAGISTRATE JUDGE

**DATE:** 3/28/19

---

[3] Plaintiff asks that the ALJ's decision be reversed and an award of benefits ordered. "It remains true that an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Allord v. Astrue*, 631 F.3d 411, 417 (7th Cir. 2011). As that is not the case here, an award of benefits is not appropriate without further administrative proceedings.